## BARR RUBBER PRODUCTS CO v FULTON et

Ohio Appeals, 6th Dist, Erie Co

Decided Oct 13, 1936

King, Flynn & Frohman, Sandusky, and Marshall, Melhorn & Marlor, Toledo, for appellant.

· John W. Bricker, Attorney General, Columbus, and Earl C. Krueger, Sandusky, for appellees.

## OPINION

By LLOYD, J.

Mr. Nelt Barr, then president of The Barr Rubber Products Company, died on February 20, 1932. His life was insured in the sum of $175,000 for the benefit of the company, $100,000 of which the company, on March 29, 1932, deposited in its commercial account in The Commercial Banking & Trust Company, Sandusky, Ohio. On this same day the company by check on its commercial account deposited $75,000 in the trust department of the bank, receiving from it the following receipt-agreement, viz:

"March 29, 1932.

"Received from The Barr Rubber Products Company, Sandusky, Ohio, its check for Seventy-Five Thousand Dollars ($75,000) drawn upon The Commercial Banking & Trust Company of Sandusky, Ohio, the proceeds of which check in the amount of Seventy-Five Thousand Dollars ($75,000) are to be held in trust by The Commercial Banking & Trust Company of Sandusky, Trustee, for the use and benefit of The Barr Rubber Products Company, and subject to its further order and direction.

"The Commercial Banking & Trust
Company,
"Sandusky, Ohio.
"Trust Department.
"By R .D. Mitchell,
"Vice-President and Trust Officer."

On March 29, the trust department deposited the $75,000 in its uninvested trust fund account in the commercial department of the bank. On April 1, 1932, the bank withdrew the money from the uninvested trust fund account and deposited it in a savings account in its commercial department, that department issuing therefor a savings account passbook in the name of The Commercial Banking & Trust Company, Trustee, for The Barr Rubber Products Company. The company first learned in December, 1932, that the $75,000 had been so deposited and thereupon demanded the performance of the trust and the return of its money, whereupon the company and the bank executed the following written agreement, viz:

"Trust Agreement

"This Memorandum of Agreement, made and concluded at Sandusky, Ohio, this twelfth day of December, 1932, by and between The Barr Rubber Products Company, an Ohio corporation (hereinafter called 'Rubber Company') Party of the First Part; The Commercial Banking & Trust Company, Trustee, an Ohio corporation, (hereinafter called 'Trustee') Party of the Third Part, all of Sandusky, Ohio.

"Witnesseth

"Whereas, the Rubber Company has heretofore deposited in trust with the Trustee the sum of $75,000 for temporary purposes and has not instructed the Trustee as to the investment of such funds and has always reserved the right and privilege of withdrawal of said sum without notice, and

"Whereas, the Trustee has deposited said funds in the Bank according to the laws of the State of Ohio in such cases made and provided for the deposit of temporary uninvested trust funds, and

"Whereas, it is the desire of the Bank to continue the deposit made by the Trustee with the Bank and the Rubber Company will consent thereto upon condition that the Bank secure said deposit by depositing with the Trustee mortgages for that purpose, Now, Therefore,

"In consideration of the premises, the Parties hereto promise, covenant and agree as follows:

"1. The Trustee may deposit or continue to deposit with the Bank the funds of the Rubber Company in its possession in the sum of Seventy-Five Thousand Dollars ($75,000), principal amount. Said deposit may be by certificate or other time deposit, but the Bank hereby agrees to permit and allow reasonable withdrawals from the principal amount from time to time should the Rubber Company require the same in the conduct or extension of its business.

"2. The Bank herewith tenders and deposits with the Trustee, and the Trustee agrees to hold as security for its deposit with the Bank of the funds of the Rubber Company, the following mortgages upon real estate situated in Erie County, Ohio: (Here follows list of securities).

"3. The Trustee shall hold said mortgages to secure any unpaid balance of the deposit of the Rubber Company after any dividend, payment or reduction of the principal amount thereof, so that the Rubber Company may always be and remain whole and secured for the entire sum of $75,000. It is the intention of the Parties that the unpaid balances due upon the mortgages set forth in Paragraph Two hereof shall be approximately dollar for dollar in ratio to the outstanding principal balance of the trust deposit for the Rubber Company.

"4. The Bank hereby assigns and transfers to the Trustee all its right, title and interest in and to the mortgages deposited in Paragraph Two hereof, or in any substitutions made therein; and the Trustees shall have the full power to take any legal action necessary or desirable in connection with said mortgages for the protection and interest of either Bank or the Rubber Company or both. The Bank agrees to execute any further documents, endorsements or papers which may reasonably be desired or necessary in the premises. The Trustee may accept substitutions for mortgages set forth in Paragraph Two hereof upon reasonable demand, provided that the mortgages substituted shall reasonably represent the same ratio of security to the Rubber Company.

"In Witness Whereof, the Parties hereto have set their hands by their officers duly authorized in the premises, all on the day and year first above written.

"The Barr Rubber Products Company
"By Randolph J. Dorn, President, and
H. I. Scott, Secretary.
"The Commercial Banking & Trust Company
"By Paul H. Sprow, President, and
Jno. A. Himmelein, Secretary.
"The Commercial Banking & Trust Company, Trustee
"By R. D. Mitchell, Vice-President and Trust Officer."

Prior to the actual signing of this agreement, the bank wrote a letter to the company, the company accepting the proposition therein suggested, as follows:

"December 21, 1932.
"The Barr Rubber Products Company,
"Sandusky, Ohio.
"Gentlemen:

"In connection with the trust agreement concerning the deposit of mortgages to secure a deposit in the bank, which agreement is about to be signed by your company and by the bank, we agree that §1 concerning reasonable withdrawals from the principal amount shall be interpreted by the parties to mean withdrawals of not more than Ten Thousand Dollars ($10,000.00) during any period of thirty days.

"Please indicate your acceptance of this agreement preliminary to the signing of the trust agreement by signing the carbon copy of this letter and returning the same to us.

"Very truly yours,
"Paul H. Sprow, President.
"Accepted December ....., 1932.
"The Barr Rubber Products Company,
"By Randolph J. Dorn, President.
"By H. L. Scott, Secretary."

Thereafter the bank assigned to and deposited with its trust department the mortgage securities listed in the contract and

the same remained in the possession of the trust department and were there when the Superintendent of Banks took possession on July 22, 1933, of the assets and property of the bank for the purpose of liquidation. In the process of liquidation, dividends had been paid to and received by the company, to which it would be entitled as a general creditor, but without prejudice to the claimed rights of the company under the agreements hereinabove described. The Superintendent of Banks refused the demand of the company to assign and deliver to it the pledged mortgage securities, and plaintiff company now contends that by virtue of its agreement with the company it is entitled to have the mortgage securities therein listed subjected to the payment of the unpaid balance of its deposit of $75,000, and, that if this agreement was "null and void, the first contract was never superseded and is still in force" and the trust department having no right thereunder to deposit the money with the commercial department, the claim of the company in any event is to be preferred over those of general creditors.

It seems apparent that the agreement pledging the mortgage securities for the debt of the bank to the company did and was intended to abrogate and to supersede the original deposit agreement. A reading of the agreement and the letter made a part thereof, clearly so indicates. It provides that the deposit shall continue as a commercial deposit; that the company may withdraw therefrom during any period of thirty days not in excess of $10,000; that the mortgage securities are to continue in the possession of the bank and be held by it as trustee to secure any unpaid balance of the company deposit; that the bank assigns and transfers to itself the pledged mortgages and reserves the complete control and disposition thereof; that at its will, other securities may be substituted for those specifically pledged, "and the trustee (the trust department of the bank) shall have the full power to take any legal action necessary or desirable in connection with said mortgages for the protection and interest of either bank or rubber company or both." In other words, if occasion arises, the bank may sue itself.

The bank is an entity under the control and management of the same officers and directors, and can not segregate and separate its duties and privileges except in so far as the law permits. Clearly, this contract of pledge was ultra vires and unenforceable.

The company, when in December, 1932, it discovered the alleged unauthorized deposit of its money in the commercial department of the bank, not only could have demanded, but if the bank were solvent, could have enforced the return of its money. The bank closed for liquidation on July 22, 1933, and for some months prior thereto was in a precarious financial condition. The same attorneys represented both the rubber company and the bank and acted for both in the preparation of the agreements entered into between them, so that it cannot be said or claimed that there was any misunderstanding as to the intended purpose of the substituted agreement, all of the parties having acted understandingly and in perfect good faith.

It seems apparent that insistence by the rubber company on the immediate withdrawal of its deposit would have precipitated the closing of the bank, hence the agreement whereby that right was lost, the rubber company voluntarily and expressly agreeing to become a general creditor and to continue as such in its financial relation to the bank.

The Superintendent of Banks does not stand in the same relation to a depositor as does a solvent bank. The duty of the superintendent is to conserve and preserve the assets and property of the bank for all of the depositors alike, and to recognize as preferred claims only those which in fact and law are such. If the bank could thus pledge its securities for one depositor, whose business it desired, it could do so as a method of procuring any number of desirable accounts, to the extent that in case of liquidation there would be little to liquidate for the benefit of general depositors.

It is difficult to discern any difference in principle between Ulmer v Fulton, Supt. of Banks, 129 Oh St 323, 195 NE 557, 97 A.L.R. 1170, and the instant case, the one involving the deposit of mortgages by the bank with itself, to secure a group of creditors; the other a deposit of mortgages as collateral to secure a debt to a single claimant.

As heretofore stated, our conclusion is that the attempted pledge of the mortgage securities to secure the rubber company deposit was an ultra vires act and that the rubber company is entitled to participate in the assets of the bank only as a general creditor.

Judgment affirmed.

OVERMYER and CARPENTER, JJ, concur.