## GRANT v
## CITY TRUST & SAVINGS BANK

Ohio Appeals, 7th Dist, Mahoning Co

Decided Nov 19, 1937

Henderson, Wilson, Wyatt & Ranz, of Youngstown, for Hugh W. Grant, Exr.

Barnum, Hammond, Stephens & Hoyt, McKain, Ohl & Swanner, of Youngstown for the bank.

J. W. Bricker, of Columbus, for superintendent of banks.

## OPINION

By CARTER, J.

James S. Paterson brought his action against the defendant bank in the Common Pleas Court, Mahoning county, and in his amended petition alleges that the defendant bank is indebted to him on his first cause of action in the amount of $140,400.00 and interest, and that there is due him from the defendant bank on his third cause of action the sum of $201,327.68, and interest. In his second cause of action he sought an injunction requiring the bank to keep separate and apart from its own funds any and all monies collected by it as payments made upon either principal or interest accruing upon the notes in question and that a lien be impressed upon the notes and mortgages and the money paid to the bank as payments on principal and interest thereon, and that defendant be required to account to plaintiff for such monies so collected. The second cause of action is not urged in this court. We will therefore give no further consideration to the second cause of action. In his fourth cause of action plaintiff sought the appointment of a receiver for the purpose of taking possession and control of all of the notes and mortgages involved in the third cause of action, with power and authority to collect monies paid upon the principal and interest thereon, and to account to plaintiff therefore, and to further preserve and protect the real estate involved in the mortgages.

During the progress of the litigation Mr. Paterson died and Hugh W. Grant was appointed executor and the cause is now being prosecuted by the executor. During the progress of the litigation upon application to the trial court, Margaret Griffith, Ella Kennedy, Bess Paterson, Cecilia Paterson and Margaret Paterson were permitted to intervene and set up their claims against the bank, these claims being based upon the same circumstances as set forth in plaintiff's first cause of action. On his own behalf, and on behalf of all other stockholders of the reopened bank, Frank H. Fisher made application for permission to intervene and file an-

swer to plaintiff's amended petition. This application was denied by the trial court. Application was made by Squire, superintendent of banks, to intervene, the bank having gone into liquidation and subsequently thereto reopened by and under order of the court. This application was allowed. Custodians were also appointed to take possession and control of certain of the notes and mortgages involved. The issues involved are numerous and complicated. Voluminous pleadings, scores of exhibits to examine hundreds of pages of record before the court and also voluminous briefs filed. With great assiduity counsel on either side have searched the law and also developed the facts and brought the same to our attention, in order to sustain their various contentions, and for this counsel deserve commendation.

The cause was tried in the court below without the intervention of a jury, jury trial having been waived by the parties. The court below found in favor of the plaintiff and all intervenors having like claims as plaintiff, on the first cause of action, found in favor of the defendant bank on the second cause of action, and also found in favor of the bank on plaintiff's third and fourth causes of action. As to plaintiff's claim for money judgment the court also ordered reformation of endorsements in certain notes transferred by the bank to Paterson, which were involved in the third cause of action, which reformation was sought by the bank so as to read "without recourse" by the bank in blank. It appears that neither party is satisfied with the lower court's determination of the issues involved, and appeal is prosecuted to this court by both plaintiff and defendant. Plaintiff-appellant appeals on questions of law. The defendant-appellant appeals on questions of law and fact. Plaintiff's appeal is from that part of the finding and judgment of the lower court adjudging and decreeing the notes and mortgages set out in plaintiff's third and fourth causes of action to be the property of James S. Paterson, and from that part of the finding and judgment of the lower court ordering the custodians of the notes and mortgages in their possession reformed to read "without recourse," and directing the custodians to deliver the notes and mortgages to the plaintiff.

Some question has been raised as to whether the appeal on behalf of the bank can be maintained as one of law and fact or one of law only. The appeal by the bank is from the findings in favor of the plaintiff and intervenors on plaintiff's first cause of action. The first cause of action in plaintiff's amended petition was one for money. The court rendered a money judgment in favor of the plaintiff and the intervenors, to which the bank set up numerous defenses. However, these were defenses going only to the right of plaintiff to recover either in full or **pro tanto**, and the bank further sought reformation of endorsements of notes, which the court granted, and of course no appeal is prosecuted by the bank to this finding, as it was in its favor.

It appears that the paramount relief sought in plaintiff's first cause of action is money, and the fact that defenses are set up, be they either legal or equitable, or both can not change the form of action, which is one at law. Defendant's first defense was a general denial. The second defense is to the effect that the contract set forth in plaintiff's petition was illegal and void as being against public policy. The third defense relates to the closing of the bank and reopening thereof by order of court, and that if plaintiff is entitled to recover it should be on the basis of the reopening order. The bank also claims credit in the way of overpayments of interest. It is clear that these are defensive matters only. Kinkead Ohio Civic Trial on Appeal and Error, on page 258, makes the following observation:

"Where the defendant sets forth new matter constituting a defense to the plaintiff's cause of action, it has no effect whatever upon the mode of trial, and is to be determined solely by the nature of the cause of action pleaded by plaintiff. A defense can not draw to itself a mode of trial different from that prescribed in the cause of action to which it relates. If it sets forth some legal or equitable consideration for the purpose of resisting plaintiff's demands without asking any affirmative relief whatever, such would not affect the mode of trial."

To the same effect see the case of **Gill v Pilkey, 54 Oh St, 348-360.** In the case of **Ireland v Cheney, 129 Oh St, 527, 2 O. O., 523,** the court say:

"Where the principal, primary and paramount relief sought, as shown by the pleadings, is equitable, the cause is one in chancery."

Conversely, if the principal, primary and paramount relief sought is not equitable but one at law, a like rule must be applied. We therefore hold ▮▮ that both appeals must be determined in this court as upon appeal at law. We might further suggest that no additional testimony was introduced in this court.

We will at this point make disposition of another question presented. A request was made by counsel for findings of fact and conclusions of law. The court made several findings of fact and separate conclusions of law. Applications were made to the trial court by both appellants for further and more complete findings. These applications were refused, and it is urged that such was error prejudicial to the parties. Assuming that the findings of fact were not sufficient upon which to base the court's conclusions of law, the entire case is before this court for review, including a complete bill of exceptions. In the case of **David W. Oliver v Charles L. Moore, and Lyda C. Moore, 23 Oh St 473**, the second paragraph of the syllabi being as follows:

"Where a motion for new trial on the ground that such special findings are contrary to the evidence has been overruled and exceptions taken, and the whole testimony embodied in a bill of exceptions, the reviewing court, having found the error complained of to exist, will look into the whole record to ascertain whether the error was prejudicial to the party against whom it was committed."

To the same effect see the case of **Oxford Township v Columbia, 38 Oh St 87**, the first paragraph of the syllabi being as follows:

"Where a party requests that the court state separately the conclusions of law and fact under the civil code and the request is not complied with, a judgment against such party should be reversed unless it appears from the record that he was not prejudiced by the refusal."

The court, in the course of its opinion, says:

"Upon the trial of questions of fact by the court is shall not be necessary for that court to state its finding except generally for the plaintiff or defendant unless one of the parties request it with the view of excepting to the decision of the court upon the questions of law involved in the trial, in which case the court shall state, in writing, the conclusions of fact found separately from the conclusions of law. This provision is one of much importance and it is in no sense directory. That there was no proper compliance with the request is admitted and it is clear to us that the action of the court in that respect affords ground of reversal unless it is shown that the plaintiffs were not prejudiced thereby, but we are of the opinion that it was shown that there was no such prejudice as to call for reversal on that ground. The record contains all the testimony offered on the trial, and objection is made that the judgment below is opposed to the weight of the evidence. In deciding the case, therefore, we necessarily ascertain the facts."

The purpose of §11421-2 **GC** is to provide an opportunity for the aggrieved party to prosecute error ▮▮ without resorting to the securing of a bill of exceptions. In this case we have before us the bill of exceptions and all of the evidence introduced in the lower court. We therefore hold that there was no error committed by the trial court in ▮▮ this regard. If no bill of exceptions were before us, another question would be presented for consideration and determination.

Complaint is also made that the court committed error in permitting the superintendent of banks to intervene and file pleadings. In his application to intervene he states, among other things, that while he had charge of the bank a reorganization thereof took place and that the bank was in his hands for liquidation, that the reorganization itself was effected, and that following the decision in the case of **Ulmer v Fulton, 129 Oh St 323, 2 O.O. 326**, he, as superintendent of banks, directed the defendant bank to return to its general assets all securities held in the so-called trust 106; that this action is challenged and also proceedings in the reorganizaion are in controversy. Some doubt is entertained by this court as to whether the superintendent of banks was or is a necessary or proper party in this case. The lower court held that he was a proper party, under the provisions of §11255 **GC**. However, we think there was no prejudicial error in this regard. It appears to this court that an applica-

tion **amicus curia** would have been the better procedure to have followed by the superintendent of banks. We might further suggest that the defenses set up by the superintendent of banks were almost identical with those asserted by the defendant bank.

Having made disposition of these various errors urged we will now proceed to make disposition of the real issues in the case. In order that a clear perspective of the issues involved may be had, it becomes necessary to quote at length from the pleadings. The plaintiff, for his first cause of action, alleges that defendant was at all times complained of herein, and is now, a banking corporation under the laws of the state of Ohio, engaged in a general banking business in Youngstown, and that in connection with the conducting of its business, and as a part of itself, it maintained what is known as a trust department; that at all times herein mentioned it had full power and authority, as such bank, to lend and borrow money, pay interest for the use of same, give collateral for the securement of monies borrowed by it, and do all things which under the law of the land might be necessary and incidental, and avers that on or about the 27th day of January, 1928, the defendant bank assigned, transferred and delivered unto its trust department certain negotiable promissory notes originally executed and delivered by owners of real estate in Mahoning county, Ohio, to the defendant bank in the regular course of its business, together with certain first mortgages on real estate in Mahoning county securing said notes, likewise originally executed and delivered to defendant bank by the makers of the notes; that co-incidental with the aforesaid assignment and transfer of the notes and mortgages securing the same to its trust department, it created and established a certain trust fund, designated by it as trust No. 106; that a written declaration of the trust was by authorization of the board of directors executed on or about January 27, 1928, by the defendant bank, through its duly authorized president H. W. Grant; that the aforesaid declaration of trust nominated and appointed the aforesaid trust department of defendant as trustee of the aforesaid notes and securities, and that on or about January 27, 1928, the trust department, by its duly appointed and authorized trust officer, Raymond H. Tracy, accepted said trust, in writing, and agreed to administer the same in accordance with the terms of this declaration of trust, and he further claims that on or about the 27th day of January, 1928, plaintiff paid the defendant and defendant received from plaintiff the sum of $180,000.00 in cash, for the purposes and upon the conditions set forth in writing in receipts given to plaintiff, of various denominations, acknowledging in the aggregate receipt of the whole of said amount, these receipts being designated as first mortgage collateral trust six per cent certificates trust No. 106. These first mortgage collateral trust six per cent certificates further provided that plaintiff was entitled to participating shares equal to the amount so received by defendant in promissory notes secured by recorded first mortgages on real estate in Mahoning County, totalling not less than $500,000.00, deposited with defendant as trustee for itself, plaintiff and other holders of other first mortgage trust six per cent certificates, and that these notes and mortgages were to be held by defendant, so designated as trustee for the purpose of securing the payment to plaintiff of the amount evidenced by these certificates, with six per cent interest. These trust certificates further provided that their term would expire on the 31st day of December, 1934, and at or after the expiration thereof plaintiff would be entitled to receive from the defendant the amount represented by his six per cent collateral certificates, together with all unpaid interest as rapidly as the defendant would receive a sufficient amount of the principal from the notes aforesaid held by it as trustee to pay same. These collateral certificates further provided that they might be terminated and retired by payment of the principal sum and all accrued interest at any date prior to the expiration period, at the option of the bank. Plaintiff further avers that at the time of the issuance of these collateral certicates the defendant had taken from its assets certain promissory notes and mortgages upon real estate of Mahoning county securing said notes, and by blank endorsements upon the notes by assignment of the mortgages and by actual delivery of them to the trust officers and trust department of said bank, segregated them from other assets of the bank and so transferred them, as aforesaid, to the trust department, to be held as security for the payment of the amount due plaintiff and other holders of these certificates.

The plaintiff then alleges a number of defaults on the part of the bank, which we deem unnecessary to enumerate. Plaintiff further alleges that the bank has failed and refused since December 31, 1934, to pay to plaintiff the principal and interest due thereon, but that defendant has paid to plaintiff all accrued interest upon his certificates to October 1, 1934, and that on or about January 1, 1935, it paid to plaintiff, as part of the termination and retirement obligation, and to apply upon payment of principal of said certificates, the sum of $39,600.00, and prays judgment against defendant upon his first cause of action in the sum of $140,400.00 with interest upon $180,000, from October 1, 1934, to December 31, 1934, at six per cent per annum, and from December 31, 1934, upon the balance or principal amount to-wit: $140,400.00 to date of judgment. As hereinbefore indicated the second cause of action is not now material. To this amended petition a second amended answer and cross petition was filed by the defendant bank, the following being the defenses urged to the first cause of action. The defendant bank admits that it is a banking corporation organized under the laws of the state of Ohio, and engaged in the general banking business in Youngstown; admits that in connection with the conducting of its business, and as a part of itself, it maintained what is known as a trust department; admits that under certain conditions and restrictions imposed by law it had authority to lend and borrow money, pay interest for the use of same, and to do such things which might under the laws of the land be necessary to the banking business, and for its answer to plaintiff's first cause of action admits that on or about the 27th day of January 1928, it assigned, transferred and delivered unto its trust department certain negotiable promissory notes originally executed and delivered to it in the regular course of its business by owners of real estate in Mahoning county, together with certain first mortgages on real estate in said county, securing said notes; admits that on or about the same date the president, secretary and trust officer of defendant company attempted to create and establish in writing, a certain trust fund, designated trust No. 106; admits that such purported written agreement was executed by said officers of said defendant company; admits that the aforesaid declarations of trust attempted to nominate and appoint the trust department of defendant as trustee for the notes and securities; admits that on or about this date trust officer, Raymond H. Tracy, attempted to accept said trust, in writing, and to agree to administer the same in accordance with the terms of the declaration of trust. Further admits that plaintiff paid to defendant bank, by the exchange of former certificates and payments of cash, the total sum of $180,000.00, in the purchase from defendant of an equal amount of trust certificates in trust 106. Further admits that the total securities so delivered to the trust department were to be not less than $500,000.00; that the declaration of trust was to expire on the 31st day of December, 1934, and that after the expiration plaintiff would be entitled to receive, as holder of said certificates the distribution as provided for in the certificates. The defendant then avers that the entire contract with plaintiff in reference to the purposes for which the $180,000.00 in money was paid, and exclusively by and within the declaration of trust and form of certificate. It further admits that after July, 1932, the trust department did not entirely comply with the provisions of this declaration of trust with reference to the substitution of notes and mortgages that were in default of payment of interest and held in trust No. 106. Then denies each and every allegation and statement of fact in plaintiff's first cause of action, as set forth and not admitted to be true. In its second defense it alleges that trust 106, as set out in plaintiff's amended petition, was from the time of its attempted creation invalid, as not being within defendant's corporate power or within the statutory laws of Ohio; that no such authority was given or to be fairly implied from its charter or the banking laws of Ohio, to sell, transfer and convey a part of its assets from its trust department and create a trust out of its own assets and to issue participating certificates therein to others, and that the provisions of purported trust 106 are contrary to fundamental provisions of banking and against public policy; sets up as a third defense that prior to the 14th day of October, 1931, this being the date upon which the superintendent of banks took over the defendant bank for liquidation, that its capital structure consisted of 10,000 shares of the par value of $100.00 per share and that Fulton, the duly qualified, appointed and acting superintendent of banks of the state, took possession of the assets and property of

the bank for the purpose of liquidating same, and that later the stockholders and depositors of the bank announced a plan for the reopening of the bank, and that it was, after hearing, ordered by the court to be reopened, and it is further claimed that the company's shares were reduced to $25.00 per share, and that additional shares of stock were sold, to the extent of $500,000.00; alleges that plaintiff was a director of the defendant bank from September 19, 1904 to 1932, and that no objection was made to the application for reopening of the bank, and further alleges that it has paid interest upon plaintiff's claim, as set forth in his first cause of action, to August 1, 1934, and that on or about January 1, 1935, it paid to plaintiff the sum of $39,600.00 as a part of the principal of said certificates; denies that plaintiff is entitled to recover from defendant any sum whatsoever upon his first cause of action, by reason of plaintiff being a party to an illegal contract and transaction. However, it further alleges that in the event it is determined herein that plaintiff is entitled to recover, as set out in his first cause of action, that it is entitled to a credit of 65% of the money paid him, to-wit, 65% of $180,000, or $117,000 and a further credit of interest thereon to July 1, 1936, in the sum of $27,748.46, and claims further credits on amounts which it claims it paid in excess of what plaintiff was entitled to. Further alleges that plaintiff is entitled to receive the sum of $63,000 in notes of the Mutual Holding Company, this holding company having been established at the time of the reopening of the bank, and it further alleges that it now is and has been at all times since the reopening and reorganization of the bank, willing and able to pay the plaintiff the sum above set forth, and to deliver to the plaintiff notes in the Mutual Holding Company in the above amount.

There was also an answer and cross petition filed by the intervenor superintendent of banks. This answer and cross petition is similar to the answer and cross petition of the bank, in which is set up the invalidity of the trust alleged to have been established, and also an allegation to the effect if plaintiff should be found entitled to recover, the recovery should be in accordance with the reopening order of the bank. A reply was filed by the plaintiff to the second admended answer of the bank and an answer to its cross petition, the answer of plaintiff to de-

fendant's cross petition being a general denial. There was also a reply filed by plaintiff to the answer of the superintendent of banks. The issues were thus joined on plaintiff's first cause of action.

It is urged that the court was in error in finding for plaintiff and intervenors having like claims as plaintiff, on the first cause of action. The trust ▮▮▮▮ ▮ as set forth in plaintiff's first cause of action is invalid and the same can not be enforced. To this effect see **Ulmer v Superintendent of Banks, 129 Oh St 323, 2 O.O., 326,** wherein the court held:

"1. Banks and trust companies have only such powers as are expressly conferred on them by their charters and by statute, or such as may fairly be implied from those expressly given.

"2. The statutes of Ohio do not authorize a bank and trust company to act in the dual capacity of settlor and trustee by creating trusts out of its own securities and selling participation certificates therein to the public.

"3. Such undertakings are opposed to sound public policy, and are invalid.

"4. Upon the insolvency of a bank and trust company, which has attempted to create trusts out of its own securities and has sold participation certificates therein to the public, the holders of such participation certificates will be placed in the position of general creditors.

"5. The legal title to all securities which may have been allocated to such ineffective trusts remains in the bank and trust company."

To the same effect see the **Barr Rubber Products Company v Fulton, Superintendent of Banks et, 8 O.O. 466; 55 Oh Ap 180; 24 Abs 22;** also **Arend v Fulton, Supt. of Banks, 7 O.O. 328; 53 Oh Ap 503; 23 Abs 16.** However, have the plaintiff and intervenors no rights under a situation as thus presented? In other words, can the bank hold this money which it admits it received as the purchase price of these participating certificates, thereby enriching itself to that amount, for the bank now has not only the money but also the securities deposited with the trustee, as same was by order of the superintendent of banks returned to the mortgage department as assets of the bank following the decision of the Supreme Court in the Ulmer case, supra. Certainly such would not be law, equity or justice. In the

case of Ulmer v Fulton, Superintendent **supra**, the court in its opinion page 342, says:

"Of course the holders of the participation certificates are not without relief. Actual knowledge of the invalidity of the trusts is not fairly chargeable to them. To hold under the circumstances that their money is irretrievably gone would be inequitable and unconscionable."

The court further say:

"If the Commercial Savings Bank & Trust Company were a going, solvent institution, the participation certificate holders would be entitled to demand and receive the full amount paid for their certificates, the bank having been enriched by the receipt of their money."

In the case at bar the bank involved is a solvent, going concern, having been reopened under order of court. In the case of **State ex rel. Fulton, Superintendent of Banks v Dean et al, 47 Oh Ap 558, 16 Abs 471,** the opinion in that case having been written by Judge Williams, now one of the members of the Supreme Court, held:

"1. Bank's act in giving collateral security for private deposits held **ultra vires.**
"2. Bank's **ultra vires** act in giving collateral security for private deposits not being positively forbidden by statute, superintendent of banks can not take possession of collateral without paying depositors amount owing them."

In the course of its opinion the court say:

"Whatever the difference of view there may be as to the effect of **ultra vires** on corporate contracts, in no jurisdiction can a party retain what it has received under such a contract and refuse to perform the contract."

In the case at bar there is no express statute prohibiting such an arrangement as was attempted in this case. In fact, it required a decision by the Supreme Court of the state to finally announce the law applicable to such a situation as here presented. I refer to the Ulmer case, **supra.** An examination of that case discloses that the decision in that case resulted in a reversal of the Court of Appeals, which apparently held contrary. Can it be said that these parties to this **ultra vires** contract acted malafides at the time of its inception? It is urged that Paterson was a director of the bank and is presumed to have knowledge of the limitation of power granted banking institutions. However, the line of demarcation between acts which are and which are not **ultra vires**, lies sometimes in the twilight zone. We are loath to believe that these parties acted in bad faith. Now can recovery be had by the plaintiff on this, his first cause of action? True, the first cause of action sets up the creation of this trust. However, it is alleged in the amended petition that the plaintiff paid the defendant and the defendant received from plaintiff the sum of $180,000.00 in cash for these collateral trust certificates, and there is no dispute as to this allegation. The bank did receive this amount. This action is one for money and the prayer is for money judgment. It is urged by the defendant bank and by the superintendent of banks, first that the attempted creation of trust 106 was invalid, and that by reason thereof the plaintiff is not entitled to recover anything from the defendant by reason of the fact that plaintiff was a party to an illegal contract. It appears to this court that the Ulmer, the Barr Rubber Products Company and Fulton, Superintendent v Deane, **supra**, are conclusive answers to this claim, and need no further discussion here. In the Ulmer case the court held that to hold under the circumstances that their money was irretrievably gone would be inequitable and unconscionable. The court in that case had before it a case quite similar to the case at bar.

Now, it is further urged by the bank if it be found that plaintiff is entitled to recover, it should be on the basis of the reopening order of the bank. No order was made as to creditors other than deposit creditors. While depositors are always creditors of the bank, nevertheless one may be a creditor and not be a depositor. The mortgages in trust 106 were turned back to the bank as bank assets immediately upon the publication of the Ulmer decision. They are now assets of the reopened bank. These mortgages were not listed as assets at the time of the reopening of the bank; therefore the assets of the organized bank are now augmented to this extent. The lower court held in favor of plaintiff and permitted plaintiff and the intervenors to recover the entire balance with interest thereon at six per cent. In this the court did not err.

In his third cause of action plaintiff claims that on or about the 28th day of May, 1923, he delivered to defendant bank the sum of $201,000.00, in consideration of which defendant represented in writing that it had at the time invested an equal amount of money in first mortgage securities, which would produce interest at the rate of not less than seven per cent per annum payable quarterly, and at that time and for said consideration defendant agreed, in writing, through its duly authorized president, H. W. Grant, that as long as plaintiff permitted it to have the use of all or any part of the money, that it would keep the same employed in investments in first mortgage securities of such an interest return to defendant as to enable defendant to pay and that it would pay to plaintiff interest at the rate of seven per cent per annum, payable quarterly, and that it would at all times hold and safely keep, separate and apart from all its other assets and choses in action, held and possessed by it, and as collateral security to plaintiff for return to plaintiff of the aforesaid money so delivered to it, or any portion thereof remaining in the possession of defendant after the return of a part of the total amount, notes of borrowers to whom defendant had loaned monies secured by first mortgages upon real estate and complying in all respects with the law of the state of Ohio pertaining to loans made by banking institutions, so secured by mortgages on real estate, and it was further agreed that either party thereto might cancel it at will, whereupon defendant would return to plaintiff all of the money so delivered to it and held by it, with interest at the rate of seven per cent per annum, computed quarterly; that all interest due him was paid by defendant under this arrangement, to October 1, 1931, and claims that on October 1, 1931, there remained a balance of the principal sum in the amount of $189,500.00, which had not been paid to and returned to him by the defendant, and claims that from May 28, 1923 to October 14, 1931, he permitted defendant to hold and use the funds delivered to it by him, wholly upon the representations made by defendant that it was and would hold and keep custody of the notes secured by real estate mortgages as security to plaintiff, separate from and unmixed with its assets from its assets, then claims that on or about October 14, 1931, the defendant, through its duly authorized assistant secretary, W. P. Redden, attempted to substitute the notes secured by first real estate mortgages of the kind and description contemplated by the parties to said contract, and which they were theretofore holding as security to plaintiff, and that in so substituting said notes and mortgages for others theretofore held as security to plaintiff, did so by endorsements of the notes before their maturity in blank, thus making negotiable by delivery thereafter with intent to record upon the backs of the notes its obligation to pay to plaintiff the total amounts shown by the notes, with interest, and claims that he, the plaintiff, had no actual knowledge until on or about November 14, 1934 of this fact, but that at all times from October 14, 1931 to November 14, 1934, the notes and mortgages were not of the kind, description and security value contemplated by the contract between the parties, and claims that this substitution was done without the knowledge and consent of plaintiff and in fraud of his rights under the contract; that defendant has at all times since October 16, 1931, refused to remedy this default and to comply with its obligation; that because of these facts that on or about the 13th day of October, 1934, he demanded of defendant the return to him of the amount of money then remaining unpaid, with unpaid accrued interest thereon, and that the defendant failed and refused to comply, and has ever since failed and refused to comply or to pay the plaintiff the amount of money due him from it, and prays judgment against the defendant on the third cause of action in the sum of $201,327.68, with interest.

In his fourth cause of action he claims that on or about July 6, 1931, the defendant, through its duly authorized assistant secretary, W. P. Redden, placed and deposited the aforesaid notes and mortgages listed in the third cause of action, in a certain safety deposit box of defendant, this box being known as box 323-4, to the end and for the purpose of the intermingling of these securities and assets of the defendant bank, and so that they could be definitely determined as being held as collateral security for the performance of its obligations to the plaintiff under the terms of the contract set forth in the third cause of action; that on or about the 14th of October, 1931, Redden delivered the key to said box, but the plaintiff avers that at that time he had no knowledge or information of the nature or description of any se-

curities contained in the box but believed them to be of the nature, kind and security and value which defendant had agreed to furnish as collateral security, and it is further claimed that it was understood and agreed between plaintiff and the defendant that the defendant bank would continue as theretofore, to collect from the makers of the notes payments of principal and interest for its own benefit as owner of said securities; that the banking house of defendant was not open for the transaction of banking business from October 14, 1931, to July 1, 1932; that upon its reopening it continued to collect all of the principal and accrued interest paid by the makers of the notes and has paid portions of the monies so collected to plaintiff to apply upon its indebtedness to him, and he further urges that in order to preserve the value of the notes now contained in a safety deposit box and now held by McKain & Ohl, that foreclosure proceedings should be commenced to foreclose certain of the mortgages and liens securing said notes, and that a receiver should be appointed to collect the income produced by the real estate upon which such liens are encumbrances; that defendant did, on or about the 13th day of November, 1934, notify plaintiff that said notes had been sold to him by the defendant, and has at all times since that notification refused to make any reasonable attempts or efforts to require payments upon them. He further claims that on the first day of June, 1933, defendant, through its assistant secretary, Redden, upon the pretext and representation to plaintiff that it would require its attorneys, McKain & Ohl, of Youngstown, to commence foreclosure proceedings upon the notes and mortgages then contained in the safety deposit box and signed by Theresa L. Gillen and Austin P. Gillen and May C. Bender, obtained from plaintiff the use of the key to said box and thus obtained possession of these last mentioned notes and mortgages, and while in the possession of defendant, and without the knowledge or consent of plaintiff, the assistant secretary changed the form of endorsements upon the notes and assignments of the mortgages so as to cause them to read that the negotiation of them was without recourse upon defendant, with intent to defraud plaintiff of his right to have recourse on it for the payment of said notes under the law, and to partially relieve defendant of its obligation of paying to plaintiff its indebtedness to him; that no suit has been commenced, either in law or in equity, to collect from the makers of the two last notes and mortgages; that in December, 1934, plaintiff tendered to defendant the key to the box, which tender was repudiated and acceptance of the key refused, and that plaintiff has impounded the key to the safety deposit box with the clerk contemporaneously with the filing of his amended petition.

An answer and cross petition was filed by the intervenor superintendent of banks to plaintiff's third and fourth causes of action. In his answer he sets forth six separate defenses. The bank, in its answer to the third and fourth causes of action, sets forth some seven defenses. The bank's defenses being as follows:

For its answer to plaintiff's third cause of action, admits that prior to the 28th day of May, 1923, plaintiff delivered to H. W. Grant, then president of the defendant company, the sum of $201,000.00; that on the 28th day of May, 1923, plaintiff received from Grant a paper writing, but denies that said writing was of the purport as alleged by plaintiff in his third cause of action, and further says that it is unadvised as to any further agreement between plaintiff and Grant, and for the purpose of requiring proof of same, denies that there was any other agreement as to said monies between plaintiff and any officer of defendant company, and admits that certain payments were made as alleged by plaintiff in his amended petition, and further alleges that if it should be determined upon the trial that the aforesaid notes and mortgages were the property of this defendant, and held by plaintiff as collateral security under an alleged agreement between plaintiff and Grant, that the monies of plaintiff would yield to him interest at the rate of seven per cent, and that plaintiff is entitled to receive, by way of interest upon the monies held by plaintiff only that rate allotted to depositors as of a like kind, and that the defendant has paid to plaintiff interest from April 3, 1923, to July 1, 1936, in the amount of $134,230.91, whereas he was entitled to receive from defendant only the sum of $96,575.56, and further claims as a second defense, that on or about the 14th day of October, 1931, at the request of plaintiff, these notes and mortgages which had been set aside and allocated to plaintiff under and by virtue of the aforesaid agreement, were by one W. P. Redden, an employe of defendant,

but acting for and on behalf of plaintiff, taken and placed in private box 323-4 in the name of plaintiff, located in defendant's safety deposit department and the key thereof given to plaintiff; that thereupon and subsequently thereto plaintiff exercised ownership, dominion and control of and over said mortgages and notes, and thereby adjusted, settled and compromised any and all claims that the plaintiff may have had against this defendant as set forth in his third cause of action, and as a third defense it is claimed that the plaintiff is barred and estopped from making or asserting any claim under his third cause of action, due to the fact that from October 10, 1924, to June 30, 1930, and while plaintiff was a director, he signed certain statements in which the bank was required to set forth the assets and all liabilities of the defendant, and in which statements none of the notes and mortgages so delivered to and retained by plaintiff were included. Neither did these statements, signed by plaintiff, show any liability, contingent or otherwise, of defendant to plaintiff, and that by reason of his waiting three years with full knowledge of the kind and amounts of mortgages and notes that had been allocated to him, and due to the fact that the bank had been reorganized and rehabilitated, the par value of the stock of said bank had been reduced and subsequently increased, and that loans had been secured from the Reconstruction Finance Corporation, additional stock had been subscribed and paid for, and $1,250,000 of debenture bonds sold to and purchased by the Reconstruction Finance Corporation, that said mortgage securities had depreciated in value due to depreciation in real estate and mortgage values, that he was barred and estopped from making and asserting any claims. And as a fourth defense it is alleged that it was agreed by and between plaintiff and defendant that on account of the banking situation generally, and the prospects of the closing of the City Trust & Savings Bank, the mortgages held by the bank for plaintiff, as collateral security or otherwise should be and were placed in a safety deposit box, which was done, and the key thereto delivered to plaintiff, and accepted by him, in full and complete accord and satisfaction, discharge and release of any and all claims arising by reason of the payment to the bank of the sum of $201,-000.00.

As a fifth defense defendant avers that whatever agreements were made by and between plaintiff and Grant as to matters set forth in plaintiff's third cause of action were in no manner or degree binding upon defendant, being beyond the corporate and statutory powers of defendant to perform, and that Grant and Redden were acting as the personal representatives of plaintiff and not the bank, and further claims in the sixth defense that such acts were per se illegal, void and against public policy, and plaintiff, being a party thereto, is not entitled to recover on his third cause of action, and as a seventh defense alleges that such an arrangement attempted to place plaintiff in a position more advantageous than other depositors and to the detriment of the remaining depositors and stockholders, and that by reason thereof is not entitled to recover on his third cause of action, but that if plaintiff is awarded a judgment upon his third cause of action, defendant then prays that the same may be satisfied only in accordance with the reopening order of the bank, and by way of answer to plaintiff's fourth cause of action alleges that whatever monies were collected upon the notes and mortgages, allocated to and retained by plaintiff, were collected by Redden as the personal representative of the plaintiff, and that whatever endorsements were placed upon the notes and mortgages, so allocated to and retained by plaintiff, were, as understood by plaintiff, for the mere purpose of passing title thereto to plaintiff, and that if these endorsements were otherwise than without recourse, the same was the result of a mutual mistake, and that these endorsements should be reformed to read "without recourse," and denies his second defense to the fourth cause of action, denies that the endorsements on the notes were with intent to record upon the back of the notes defendant's obligation to pay to plaintiff the total amount shown by the notes with interest, and avers that plaintiff failed to present any of the notes for payment when due or within a reasonable time thereafter, and that no notice of nonpayment was ever given to this defendant, and then alleges that the superintendent of banks, took over the bank for liquidation and that the plaintiff failed to file any claim as creditor with the superintendent of banks, failed to make any objections within the time fixed by the Common Pleas Court as to the reopening, failed and neglected to assert any claim growing out of matters set forth in plain-

tiff's amended petition herein, and that by reason thereof plaintiff is conclusively deemed to have consented to the resumption of business of said bank upon the conditions therein contained, and that by reason thereof plaintiff is barred from recovery herein in the amounts prayed for, and that if plaintiff is entitled to recover anything under the third cause of action, that the payments thereof be ordered to be made under and in accordance with the reopening order of the bank.

The answer of the superintendent of banks to plaintiff's third and fourth causes of action are quite similar to the various answers set up in the bank's answer to the third and fourth causes of action.

Replies were filed subsequent thereto but we do not deem it necessary to set those out fully in this opinion. The issues thus joined, the cause came on to be heard by the court in plaintiff's third and fourth causes of action; finding made by the court that Paterson had accepted the notes and mortgages in full satisfaction of his claim and the endorsements on the notes in blank by the bank should be and were ordered reformed to indicate thereon "without recourse", and dismissed plaintiff's third and fourth causes of action. H. W. Grant, who made the arrangement as above indicated with Paterson, and who knew more about the original transaction than any other person, was not called by either party as a witness. Mr. Paterson, plaintiff, was called. However, his testimony is not very satisfactory, as he was able to remember but very little about the original arrangement. We do have before us a letter of H. W. Grant to Paterson, sent by H. W. Grant, as president, written on stationery of the defendant bank, bearing date of May 28th, 1923. This letter is as follows:

THE CITY TRUST & SAVINGS BANK
Youngstown, Ohio
May 28th, 1923

James S. Paterson,
Youngstown, Ohio
Gentlemen:

. We acknowledge receipt of $201,000.00, which has been invested by us in first mortgage securities, which will pay you interest at the rate of 7% per annum, payable quarterly.

These mortgage securities will be held by us, and in the event that any part of them is paid off, we will substitute an equal amount in order that your money will be continuously employed.

Sincerely yours,
(Signed) H. W. Grant
H. W. Grant, President

This letter was no doubt a confirmation of some prior agreement. The purport of the letter is to the effect that the bank had received $201,000.00 which had been invested by the bank in first mortgage securities, which were to pay Paterson interest at the rate of seven per cent per annum, payable quarterly. This is indicative that these securities were sold as an investment to Paterson. The letter also further states "These mortgage securities will be held by us, and in the event that any part of them is paid off, we will substitute an equal amount in order that your money will be continuously employed." No doubt it was the intention of the parties that subsequent purchases, if any, were to be of the same tenor. This is the strongest evidence of the terms of this arrangement between Paterson and Grant that has been called to our attention. While these securities were by the bank sold to Paterson, Redden, its assistant secretary looked after the carrying out of this arrangement and the contract was carried out by and between the parties for many years. Mr. Paterson was a director, owned stock in the institution and was a large depositor therein, and no doubt desired a larger rate of interest than paid by the bank to depositors, and no doubt this arrangement was made by the bank in order that this money would not be placed otherwise by Paterson the bank thereon realizing cash on their mortgage securities as the mortgages were property of the bank, the bank being the mortgagee in each instance.

Now, it is urged by defendants that it it be determined upon the trial herein that the aforesaid notes and mortgages are the property of this defendant and held by defendant as collateral security, that then and in that event plaintiff would be entitled to receive only that rate allotted to depositors as of a like kind. Inasmuch as this court is holding that these securities were not held by the bank as collateral security for the performance of the agreement between the bank and Paterson, but rather a purchase and sale of the securities, this defense becomes immaterial. We know of no reason why the bank could not sell these securities if in

**Headnote 6.**

the judgment of the officers of the bank the interest of the bank would be promulgated thereby, and we know of no reason why in such a transaction the bank could not, as incidental thereto render itself liable as endorser by endorsement in blank, the bank in question being a trust and savings bank.

Sec 710-139 GC provides:

"A savings bank may invest its funds in or loan money on, discount, buy, sell or assign promissory notes, drafts, bills of exchange, trade and bank acceptances and other evidences of debts; but all such investments or loans made except those secured by mortgages on real estate or pledge of collateral security shall be upon notes, drafts, bills of exchange, trade or bank acceptances, or other evidences of debt payable at a time not exceeding six months from the date thereof, but not more than thirty per cent of the capital, surplus and deposits of such bank shall be so invested."

The bank stated that the securities thus sold would produce 7% per annum, payable quarterly. Similar arrangements were made with a number of other large depositors, and the bank without doubt had knowledge of these transactions. The claim that Paterson was paid too large a rate of interest and that the bank should be credited with a much lesser rate is not tenable, as the contract provided he would receive 7% quarterly on all securities purchased and this contract was for years carried out.

Now, as to the claim urged that on or about the 14th day of October, 1931, by reason of the fact that the mortgages allocated to plaintiff and placed in a private box known as 323-4 in the name of Paterson, and the key given to plaintiff, and the fact that plaintiff subsequent thereto exercised ownership, dominion and control over the mortgages contained within the box, that by reason thereof he thereby adjusted, settled and compromised any and all claims he may have had against the bank, we have gone over this record with this claim in view and conclude that there was no such an agreement established in the way of a compromise or accord and satisfaction. On the other hand, there is testimony in the record to the effect that while the bank was in liquidation and after its reopening, Paterson was told that the agreement would be carried on as theretofore, and was so carried on. Thus indicating that there was no such an arrangement, compromise or election or accord and satisfaction. We think the court was in error in so holding. It was entirely consistent under either the theory of the plaintiff in this case or the defendant for plaintiff to have in his possession and control these securities whether they were deposited as collateral security as claimed by Paterson or as purchased securities as claimed by the bank and the fact that Paterson had these securities in his possession and control should in no way jeopardize his rights or place him in a position as electing to take same in satisfaction of his claim against the bank. There is no evidence in the record where any such an agreement was entered into between the bank and Paterson. Neither is there any evidence of an agreement of compromise or accord and satisfaction.

Now, it is urged that plaintiff is barred and estopped from making any claim against the bank. Due to the fact that on October 10, 1924, and June 30, 1930, plaintiff signed certain statements as a director of the bank, in which plaintiff and other directors were required to set forth the assets and all liabilities of the defendant, and in which statements none of the notes and mortgages so delivered to and retained by plaintiff were included, nor did said statement signed by plaintiff, show any liability, contingent or otherwise of defendant to plaintiff by reason of any purported agreement as set out in plaintiff's third cause of action. The bank at this time certainly had knowledge of the transaction and therefore cannot maintain its contention of estoppel. The bank was not misled in any way. Neither was there any fraud perpetrated against it. It had through its officers, agents and employees full knowledge of this transaction and proceeded to carry it out after the reopening thereof. The defendant is the same bank that entered into this agreement with Paterson, which is now a going concern.

It is further urged that with full knowledge of the kind and amount of mortgages and notes that had been allocated to him, waited more than three years before attempting to make any claims that plaintiff had against the defendant bank, during which intervening time the bank had been reorganized, rehabilitated and reopened, the capital stock of the bank had

been reduced and subsequently increased, that loans had been secured from the Reconstruction Finance Corporation, that additional stock had been subscribed and paid for, additional deposits made in the bank, and $1,250,000.00 of debenture bonds sold to and purchased by the Reconstruction Finance Corporation. Inasmuch as this court is of the opinion that the basis of plaintiff's claim is found in the agreement, as indicated by the letter hereinbefore referred to, plaintiff is not estopped from having his rights adjudicated in accordance therewith; or by reason of delay in the bringing of the action. We know of no reason why a party to an agreement can not bring an action within any time until same is barred by the statute of limitations, unless otherwise terminated. No statute of limitations has been urged, and under the evidence in this case no such defenses as estoppel, compromise or accord have been successfully sustained. This was an obligation of the bank prior to and at the time of going into liquidation, and upon reorganization this obligation became the obligation of the reorganized bank and the reorganized bank was bound by the terms of this agreement, as the reopening order in no way affected this agreement

Now as to the fifth defense, that whatever agreements were made by and between plaintiff and Grant, as set out in the third cause of action were in no manner or degree binding on the defendant, being beyond the corporate and statutory powers of defendant to perform, this defense is immaterial under this court's holding. It is further urged that the agreements were the personal act of Grant, and that Grant and Redden were the personal representatives of plaintiff and in no way represented the bank, we are satisfied that the bank had full knowledge of these arrangements between Grant, Redden and the plaintiff, and with the other parties with whom similar arrangements were made. We are unable to conceive of a situation of this kind continuing over a long number of years involving assets and transactions of such major importance that the bank had no knowledge of same. We are satisfied that Grant and Redden represented the bank in these transactions.

It is further urged in the sixth defense that the contract as set out in plaintiff's third cause of action is unenforceable for the reason that the plaintiff was a party to an illegal contract. This defense becomes immaterial under the holding of this court, that the transaction was one of purchase and sale and was not an illegal transaction.

The seventh defense is to the effect that if plaintiff is entitled to recover that same should be satisfied only in accordance with the reopening order, as set forth by defendant in its answer to plaintiff's first cause of action.

The opening order of the bank provided that the depositors of said bank "should within a reasonable time, ▌▌▌ surrender to said bank their pass books or other evidence of indebtedness, and should accept new pass books from said bank as evidence of indebtedness, to be issued by said holding company, representing 35% of their deposits, and the balance was to be cash". It therefore appears that restrictions were imposed upon general depositors. No order was made concerning creditors other than deposit creditors. After the purchase of these securities, which belonged to the bank, and the money appropriated for that purpose, the money then became the assets of the bank and the securities the property of plaintiff. He was not a depositor as to the money thus appropriated for the purchase of these securities. The reopening order had no effect upon him as a depositor of such money, as to the funds thus appropriated.

Now, as to the claim of defendant bank that the endorsement in blank upon the notes by the bank were endorsed by the parties for the mere purpose of passing title, we are unable to conclude from the record and by that degree of proof required, that such was the agreement and that there was a mutual mistake when the bank endorsed these securities in blank. It is stated in the brief of plaintiff that the third and fourth causes of action are not based on the bank's endorsement in blank. However, the court made a finding of reformation of these endorsements and such is urged as error in this court by the appellant, Paterson. There is no evidence in the record of a mutual mistake in this regard as claimed by the bank. There is no evidence in the record that at the time of the original agreement entered into between Grant as president of the bank and Paterson that these securities were to be endorsed without recourse. Reformation cannot be granted unless the evidence is clear and convincing.

In the case of **Farr v Ricker, 46 Oh St**

265, the second paragraph of the syllabi reads as follows:

"A blank endorsement may, like any other written agreement, be reformed upon equitable principles, in an action on the endorsement for the purpose of a defense. In such action the cause of reformation should be stated by way of cross petition with a prayer for such relief; and the averments should be supported by clear and convincing proof, to warrant the relief."

In the case of Shannon Motor Co. v Universal Mortgage and Discount Co., 116 Oh St 609, the syllabi is as follows:

"1. When a promissory note is by the payee thereof transferred with intent to pass title therein, and unqualifiedly endorsed by such payee to evidence the transfer, the contract implied from such endorsement cannot, in the absence of fraud or mistake, be varied or explained by parol evidence as to prior or contemporaneous agreement.

"2. In an action upon such endorsement, the endorser, for the purpose of defense, may seek, by way of cross petition, the reformation of such endorsement, upon equitable principles; if the averments of such cross petition are not sustained by clear and convincing proof, such relief is properly denied."

We think the court erred in granting to the bank the relief prayed for on the ground of mutual mistake. This transaction was a sale of these securities by the bank of assets which belonged to this bank, and as hereinbefore indicated, we are of opinion that the bank could, in the course of its business, sell same, and as incidental hereto could, by endorsement in blank, make itself liable thereon as endorser to the same extent that an individual might, and it did so when it endorsed same in blank at the time of allocation of same to plaintiff, and should not now be permitted to change that endorsement to read "without recourse" to escape liability thereon. The evidence is not clear and convincing that there was a mutual mistake in this regard.

It is further urged that no notice was given the bank of the non-payment of notes when due or within a reasonable time thereafter. In order to hold an endorser due notice must be given, as provided by §8194 GC. We have no knowledge as to what the situation is regarding this claim of the defendant bank that notice of non-payment was not given the bank.

Summarizing our conclusions we are of opinion that the lower court did not err in finding in favor of plaintiff and interveners Margaret Griffith, Ella Kennedy, Bess Paterson, Cecilia Paterson and Margaret Paterson on the first cause of action, and that the reopening order of the bank was not applicable thereto.

We are further of opinion that the lower court erred in finding that Paterson had made an election to accept the securities deposited in the safety deposit box in full satisfaction of his claim against the bank; in finding that the defendant bank was entitled to reformation of the endorsements upon the sold securities. The court did not err in its finding that plaintiff was not entitled to recover a money judgment under plaintiff's third and fourth causes of action. Neither did the lower court err in holding that the reopening order did not affect Paterson's claim.

By virtue of the authority vested in this court by the constitution and statutory enactments, Courts of Appeals may affirm, reverse or modify judgments of the lower courts; in conformity thereto the judgment of the lower court is modified as hereinbefore indicated and affirmed as modified.

ROBERTS and NICHOLS, JJ, concur.